No. DA 06-0143

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 57

SWANK ENTERPRISES, INC., and ST. PAUL FIRE
AND MARINE INSURANCE COMPANY,

        Plaintiffs, Respondents
           and Cross-Appellants,

    v.

ALL PURPOSE SERVICES, LTD., and CONTINENTAL
WESTERN INSURANCE COMPANY,

        Defendants and Appellants.


APPEAL FROM:    District Court of the Eleventh Judicial District,
                       In and For the County of Flathead, Cause No. DV 01-487(A)
                       Honorable Ted O. Lympus, Presiding Judge


COUNSEL OF RECORD:

        For Appellants:

                Karl K. Rudbach; Kaufman, Vidal, Hileman & Ramlow
                Kalispell, Montana

        For Respondents:

                Todd A. Hammer, Angela K. Jacobs; Hammer, Hewitt & Jacobs,
                Kalispell, Montana


                                Submitted on Briefs:  January 4, 2007

                                       Decided:  March 5, 2007


Filed:

                  _____
                              Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      Plaintiffs Swank Enterprises, Inc. (Swank) and St. Paul Insurance Company (St. Paul) filed a declaratory action seeking affirmation that defendant Continental Western Insurance Company (Continental) had a duty to defend Swank and was thus liable for the settlement paid to the City of Libby on Swank's behalf by St. Paul.  Continental denied the allegation, claiming that the policy's provisions excluded coverage for Swank, an additional insured. The District Court, concluding that the policy did provide coverage for Swank, entered summary judgment against Continental for the settlement amount plus attorney fees.  We affirm in part, reverse in part, and remand for further proceedings.

¶2      Continental raises three issues on direct appeal:

¶3      I.  Did the District Court err in concluding that the 1997 policy was the applicable policy?

¶4      II.  Did the District court err in concluding that the policy exclusions, all of which addressed the "named insured," did not apply to Swank, an "additional insured?"

¶5      III.  Did the District Court err by holding Continental liable for the entire settlement amount, as opposed to a pro-rated amount with St. Paul?

¶6      Additionally, Swank raises the following issue on cross-appeal:

¶7      IV.  Did the District Court err by not awarding prejudgment interest?

**BACKGROUND**

2

¶8     In November of 1996, Swank and the City of Libby entered into a contract for the construction of a water treatment plant. Swank subsequently entered into a subcontract with All Purpose Services (All Purpose) to paint the filter tanks and pipes at the treatment plant. The contract between Swank and All Purpose called for All Purpose to designate Swank as an additional insured on All Purpose's commercial general liability insurance. Continental provided this insurance to All Purpose under two policies, both of which listed Swank as an additional insured. One policy was in effect from January 25, 1997 to January 25, 1998 (the 1997 policy), and the second was in effect from January 25, 1998 to January 25, 1999 (the 1998 policy).

¶9     All Purpose selected the paint and painted the tanks and pipes from December 1997 to early February 1998. After All Purpose finished the job it was discovered that All Purpose had used an improper type of paint. The treatment plant's tanks and pipes were stripped and repainted and the treatment plant was shut down for the duration of the repair work. The City of Libby consequently sued Swank for the costs associated with repainting the pipes, alleging that: (1) Swank, as the general contractor, acted negligently by failing to properly coordinate the work of All Purpose, by not ensuring that All Purpose was using the correct type of paint and by not stopping All Purpose's work; and (2) Swank was vicariously liable for All Purpose's negligence.

¶10    Swank tendered defense of the City of Libby's claim to Continental based on Swank's status as an additional insured and made a demand upon Continental for indemnity. Continental refused to defend or indemnify Swank, citing to exclusions (j), (k), (l), and (m)

of its policy with All Purpose as support for its position that the policy did not provide coverage to Swank for the City of Libby's claim. Swank then tendered the City of Libby's claim its own insurer, St. Paul. St. Paul reached a settlement with the City of Libby, and issued a payment of $120,102.42 to the City of Libby on December 7, 2000. St. Paul issued an additional and final payment to the City of Libby for $27,899.35 on December 21, 2000, for a total settlement of $148,001.77.

¶11 Swank and St. Paul then brought a declaratory action against Continental and a claim seeking indemnification against All Purpose. Continental initially defended its position that no coverage existed based strictly on the exclusions contained in the 1997 policy. In fact, when Swank requested a copy of the applicable policy, Continental provided it with a copy of the 1997 policy. However, by the time Continental submitted its summary judgment motion and accompanying brief it was no longer relying on the terms of the 1997 policy, but on the 1998 policy, and was implicitly arguing that the 1998 policy applied and that the exclusions in that policy precluded coverage for the City of Libby's claims against Swank. Swank responded that, because the improper paint was applied during the coverage period of the 1997 policy, that policy and its exclusions apply. Swank also argued that the exclusions in the 1997 policy apply only to the "named insured," All Purpose, and not to Swank, as an "additional insured." The District Court agreed with Swank, and concluded that Continental is liable for the settlement amount as well as costs and attorney fees, but that prejudgment interest is not appropriate because the amount of liability was in controversy and therefore uncertain until the court entered judgment.

4

¶12    Continental appeals the District Court's grant of summary judgment for Swank and Swank cross-appeals the court's denial of prejudgment interest.

**STANDARD OF REVIEW**

¶13    We review a district court's grant of summary judgment *de novo*. *Montana Mountain Products v. Curl*, 2005 MT 102, ¶ 8, 327 Mont. 7, ¶ 8, 112 P.3d 979, ¶ 8 (citations omitted). The district court must decide whether there exists any genuine issue of material fact. If none exists, the district court must then decide whether to grant the motion as a matter of law. *Montana Mountain Products*, ¶ 8 (citations omitted).

¶14    We review a district court's decision to grant or deny an award of prejudgment interest to determine if the District Court's interpretation of the law is correct. *Ramsey v. Yellowstone Neurological Assocs.,* 2005 MT 317, ¶ 18, 329 Mont. 489, ¶ 18, 125 P.3d 1091, ¶ 18 (citations omitted).

**DISCUSSION**

¶15    **I.  Did the District Court err in concluding that the 1997 policy was the applicable policy?**

¶16    The 1997 policy, by its terms, only applies to "property damage" that occurred during the policy period. The 1997 policy defines "property damage" as:

> a.     Physical injury to tangible property, including all resulting loss of use of the property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

> b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

All parties agree that the "loss of use" of the treatment plant occurred after the 1997 policy expired. The question, then, is whether the selection and application of paint to the pipes and tanks by All Purpose, which did occur during the 1997 policy period, constituted "physical injury to tangible property." We conclude that the application of improper paint did cause "physical injury" to the pipes and tanks. The 1997 policy thus applies to all damage suffered by the City of Libby because the resulting loss of use is "deemed to occur at the time of the physical injury that caused it."

¶17    Continental, citing to *Endo Laboratories, Inc. v. Hartford Ins. Group*, 747 F.2d 1264, 1268 (9th Cir. 1984),  argues "that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was actually damaged." While Continental agrees that the paint was applied during the 1997 policy period, it categorizes the application of the improper paint as the "injury-producing act, not the injury itself." The City of Libby was therefore not "actually damaged," according to Continental, until the plant was shutdown for repainting, after the 1997 policy period.

¶18    Although our case law is sparse on the subject of what, exactly, constitutes "physical injury" in the context of  a commercial general liability insurance contract, we did consider the issue in *Lindsay Drilling & Contracting v. U.S. Fidelity & Guarantee Co.*, 208 Mont. 91, 676 P.2d 203 (1984).  There we considered, among other issues, whether "salting" of core samples with gold constituted "physical injury" under a definition of "property damage" that

6

read: "physical injury to or destruction of tangible property . . . ." *Lindsay Drilling*, 208 Mont. at 95, 676 P.2d at 205. We concluded that the core samples had been "physically injured" because "[t]hey were physically and materially altered when they were salted with gold. That alteration resulted in a detriment . . . ." *Lindsay Drilling*, 208 Mont. at 96, 676 P.2d at 206. Applying this rationale, we now hold that the term "physical injury" refers to a physical and material alteration resulting in a detriment.

¶19 Here, the application of improper paint during the 1997 policy period caused "physical injury" because it physically and materially altered the treatment center's tanks and pipes, resulting in a detriment to the City of Libby. The detriment in fact was that the pipes and tanks had to be stripped and repainted. However, even if the City of Libby had taken no action (that is, even if the treatment plant had not been shut down and repainted), the City still would have been damaged because the paint would not have sufficiently protected the pipes and tanks. As with the "salted" core samples in *Lindsay Drilling*, the application of improper paint reduced the value of the pipes and tanks to the City of Libby.

¶20 Additionally, the fact that the discovery or diagnosis of the problem did not occur until after the 1997 policy period is of no consequence. A "physical injury" can occur "even though the injury is not 'diagnosable,' 'compensable,' or manifest during the policy period as long as it can be determined, even retroactively, that some injury did occur during the policy period." *In re Silicone Implant Litigation*, 667 N.W.2d 405, 415 (Minn. 2003) (citations omitted).

7

¶21 We hold, therefore, that the 1997 policy applies to the City of Libby's claims against Swank because the application of improper paint to the treatment center's pipes and tanks by All Purpose during the 1997 policy period constituted "property damage."

¶22 **II. Did the District court err in concluding that the policy exclusions, all of which addressed the "named insured," did not apply to Swank, an "additional insured?"**

¶23 Exclusions (j), (k), (l) and (m), which Continental asserts preclude coverage for the City of Libby's claims against Swank, all address "you" or "your." The 1997 policy defines "you" and "your" as referring to the "Named Insured," All Purpose. The exclusions at issue thus only directly refer to All Purpose. The exclusions apply to "property damage" arising out of All Purpose's operations and "property damage" to All Purpose's "product." The exclusions, therefore, if applicable, would preclude coverage for damage due to All Purpose's botched paint job.

¶24 The policy lists Swank as an additional insured, and provides coverage to Swank for "liability arising out of [All Purpose's] operations performed for [Swank]." The policy also contains a "severability of interests" clause entitled "Separation of Insureds." This clause provides that the policy applies "[s]eparately to each insured against whom claim is made or 'suit' is brought."

¶25 Swank contends, and the District Court agreed, that the "severability of interests" clause acts to provide All Purpose, as the named insured, and Swank, as the additional insured, with separate coverage, as if each were separately insured with a distinct policy. As the exclusions only reference the "named insured," they do not apply to Swank as an

8

"additional insured." The only restriction on Swank's coverage, Swank claims, is that the liability "arise out of" All Purpose's operations for Swank.

¶26 Continental counters that, while the exclusions do refer to All Purpose and All Purpose's work, they also exclude Swank's claims that arise from All Purpose's work because the exclusions apply to all claims alleging the described "property damage," regardless of who is seeking coverage. Continental would have no reason to include exclusions relating to Swank's own work, because Swank's own work is outside the scope of coverage. According to Continental, Swank is entitled to full coverage, as a separate insured, but not to extra coverage excluded under the policy.

¶27 We are bound to interpret the terms of an insurance contract according to their usual, common-sense meaning as viewed from the perspective of a reasonable consumer of insurance products. *Wendell v. State Farm Mut. Auto. Ins. Co.*, 1999 MT 17, ¶ 14, 293 Mont. 140, ¶ 14, 974 P.2d 623, ¶ 14 (citations omitted). Further, exclusions from coverage will be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy. *Marie Deonier & Assoc. v. Paul Revere Life Ins. Co.*, 2000 MT 238, ¶ 45, 301 Mont. 347, ¶ 45, 9 P.3d 622, ¶ 45 (citations omitted).

¶28 The language of the exclusions at issue is clear and the reference pronouns are defined in the policy. The exclusions clearly refer to "property damage" arising out of *All Purpose's* operations and "property damage" to *All Purpose's* "product." The exclusions do not reference Swank. When strictly construed based on their plain language, the exclusions at issue do not exclude claims made by Swank, especially when considered in light of the

9

severability of interests clause. On the other hand, the exclusion section is prefaced by the language "[t]his insurance does not apply to" with the list of exclusions following, which can be read to exclude coverage to *any* insured when the underlying damage triggers the exclusion.

¶29    The exclusions at issue, therefore, can be read two ways: either the exclusions only apply to All Purpose, since they specifically reference the named insured, or the exclusions arise from the actions of the named insured but apply to any insured seeking coverage. In other words, the language of the exclusions is ambiguous. An ambiguity exists when the contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations. *Wendell*, ¶ 14 (citations omitted). Ambiguities in the language of the contract will be construed against the insurer. *Wendell*, ¶ 14 (citations omitted).

¶30    As further evidence of ambiguity, we need only consider the amended endorsement to the 1998 policy, entitled "Additional Insureds," which expressly provides, unlike the 1997 policy, that "all exclusions" apply to "additional insureds." Logic dictates one of two reasons for the change. Continental changed the policy so that the exclusions referring to "you" and "your" would also apply to additional insureds, which implies that the exclusions did not apply to additional insureds under the 1997 policy, or Continental sought to clarify that the exclusions apply to additional insureds, which indicates that the 1997 policy was ambiguous.

¶31    We conclude, therefore, that the 1997 policy, in regards to the exclusions at issue, is at best ambiguous. Keeping in mind that exclusions are to be narrowly construed, we uphold the District Court's determination that the exclusions did not apply to Swank and the court's

10

corresponding conclusion that Continental had a duty to defend the City of Libby's claim against Swank.

¶32 **III. Did the District Court err by holding Continental liable for the entire settlement amount, as opposed to a pro-rated amount with St. Paul?**

¶33 Continental claims that the District Court should have pro-rated the settlement amount between Continental and St. Paul, Swank's primary insurer. Continental, citing to *Mountain West Ins. Co. v. Credit General Ins. Co*, 247 Mont. 161, 163-64, 805 P.2d 569, 570-71 (1991), notes that when two insurance policies apply to the same loss, the "other insurance" policies should be examined to determine the proper allocation of the loss. Continental thus requests that this action be remanded for an allocation of the settlement.

¶34 Continental, however, did not directly raise this issue below. Continental only argued that, if coverage applied to Swank, Continental was an excess insurer (under the 1998 policy) and thus had no liability as St. Paul, the primary insurer, had fully covered the settlement within the limits of its policy. In fact, Swank, not Continental, came closest to raising the pro-rata issue by arguing, in its summary judgment reply brief, that, if the 1998 policy applied, both insurers should "share equally."

¶35 We have made it clear that a party's theory may not change on appeal, because it is fundamentally unfair to fault a district court for failing to rule correctly on an issue it never had the opportunity to consider. *State v. Johnson*, 2005 MT 318, ¶ 13, 329 Mont. 497, ¶ 13, 125 P.3d 1096, ¶ 13 (citations omitted). Although Continental addressed the larger issue of dual coverage, alleging that it was not liable for the settlement because St. Paul was the

11

primary insurer, it failed to argue that liability should be pro-rated. Further, St. Paul's policy was not introduced into evidence. Consequently, since the District Court had neither the theory nor the evidence to rule on the issue, we decline to address it for the first time on appeal.

¶36 Even assuming the issue was raised, Continental would be estopped from denying full coverage for Swank's defense costs and judgment, including settlement, due to its unjustifiable failure to defend. *See Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶¶ 20-28, 321 Mont. 99, ¶¶ 20-28, 90 P.3d 381, ¶¶ 20-28.

¶37 **IV. Did the District Court err by not awarding prejudgment interest?**

¶38 The District Court declined to award Swank and St. Paul prejudgment interest on the settlement amount paid to the City of Libby, reasoning that Swank's "entitlement" to damages was "justifiably contested" by Continental, and therefore Swank's right to recover was not certain and did not vest until the court granted summary judgment. Swank contends that, while liability was disputed, the amount was not and was made certain when St. Paul paid the second and final settlement payment.

¶39 Section 27-1-211, MCA, provides:

> Every person who is entitled to recover damages certain or capable of being made certain . . . and the right to recover [is vested] upon a particular day is entitled also to recover interest thereon from that day . . . .

The three criteria which must be satisfied for an award of prejudgment interest are: (1) an underlying monetary obligation; (2) the amount of recovery must be certain or capable of being made certain by calculation; and (3) the right to recover must vest on a particular day.

*Safeco Ins. Co. v. Lovely Agency*, 215 Mont. 420, 424, 697 P.2d 1354, 1356 (1985) (citations omitted). However, "[t]he fact that a claim is disputed does not make it uncertain," as long as the damage amount is reduced to certainty on a particular day. *Lovely*, 215 Mont. at 425, 697 P.2d at 1357 (citations omitted).

¶40   Here, the amount of the obligation has been certain since St. Paul paid the second and final settlement payment to the City of Libby. The fact that Continental disputed its liability to defend or insure Swank does not make the amount uncertain. The amount owed was reduced to a particular figure, $148,001.77, on December 21, 2000, and Swank's right to recover correspondingly vested on that day. Swank and St. Paul are thus entitled to prejudgment interest on the settlement paid to the City of Libby.

## CONCLUSION

¶41   We affirm the District Court's determination that the 1997 policy is the applicable policy, that the exclusions in the 1997 policy do not apply to the City of Libby's claim against Swank, and that Continental is therefore liable to Swank and St. Paul for the settlement paid by St. Paul to the City of Libby on Swank's behalf.

¶42   However, we reverse the District Court's denial of prejudgment interest, and remand for further proceedings consistent with this opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JOHN WARNER
/S/ JIM RICE

13

/S/ JAMES C. NELSON
/S/ BRIAN MORRIS