DA 10-0226

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 270

PARK PLACE APARTMENTS, L.L.C.,

        Plaintiff and Appellant,

   v.

FARMERS UNION MUTUAL INSURANCE
COMPANY, WILLIAM F. WILHELM, and
MONTANA FARMERS UNION
INSURANCE AGENCY, INC.

        Defendants and Appellees,

WILLIAM F. WILHELM,

        Third-Party Plaintiff and
        Appellee,

   v.

WHITEFISH INSURANCE AGENCY, INC.,
A Montana Corporation,

        Third-Party Defendant
        and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                  In and For the County of Flathead, Cause No. DV 09-379
                  Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Terry N. Trieweiler; Trieweiler Law Firm; Whitefish, Montana

        For Appellees:

                Steven J. Fitzpatrick, William J. Gregoire; Smith, Walsh, Clarke &
                Gregoire, PLLP; Great Falls, Montana (William F. Wilhelm)

James R. Halverson; Halverson & Gilbert, P.C.; Billings, Montana (Montana Farmers Union Insurance Agency, Inc.)

Guy W. Rogers, Matthew I. Tourtlotte; Brown Law Firm, P.C.; Billings, Montana (Whitefish Insurance Agency, Inc.)

Douglas J. Wold; Wold Law Firm, P.C.; Polson, Montana (Farmers Union Mutual Insurance Company)

For Amicus Curiae:

Amy Eddy; Bottomly & Eddy, PLLP; Kalispell, Montana (Montana Trial Lawyers Association)

Lawrence A. Anderson; Attorney at Law; Great Falls, Montana (Montana Trial Lawyers Association)

Submitted on Briefs: October 13, 2010

Decided: December 21, 2010

Filed:

_____
Clerk

2

W. William Leaphart delivered the Opinion of the Court.

¶1      Plaintiff and Appellant Park Place Apartments, LLC ("PPA") appeals from the order of Flathead County District Court granting summary judgment in favor of Farmers Union Mutual Insurance Company (FUMIC) and its former agent Bud Wilhelm (Wilhelm), and denying PPA's cross-motion for summary judgment. PPA sued FUMIC, Wilhelm, and Montana Farmers Union Insurance Agency (MFU) when FUMIC denied coverage on a claim made by PPA. This case was consolidated with a third-party claim by Wilhelm against Whitefish Insurance Agency, Inc., but that claim is not a subject of this appeal. We reverse.

¶2      We consider the following issue on appeal:

¶3      ***Whether the District Court erred in granting summary judgment in favor of FUMIC and Wilhelm, and in denying PPA's cross-motion for summary judgment.***

### FACTUAL AND PROCEDURAL BACKGROUND

¶4      In 2001, PPA, through its sole owner, Whitefish attorney William Hileman, began investigating the purchase of a 24-unit apartment complex at 601 Park Avenue in Whitefish. Hileman had the property appraised, and the market value of the complex was estimated to be $750,000. The complex consists of a long, rectangular apartment building, a carport running along the length of the building, and a small laundry and storage building on the opposite side of the carport. The $750,000 estimate included a value of $46,200 for the carport. In connection with the purchase, Hileman contacted Wilhelm, whom he had known for a decade and from whom he had previously purchased insurance. Hileman requested full casualty and liability coverage for the property, which

3

he described as FUMIC's standard "business pack" of insurance products for commercial property owners. The policy limit was set at the appraised value of $750,000. Wilhelm filled out the application for insurance form on Hileman's behalf, and listed the two buildings (the 24-unit apartment building, and the laundry building) on the "Declarations" page. When shown the completed application, Hileman asked Wilhelm what the "second" building (meaning the laundry building) was. Wilhelm informed Hileman that listing the laundry building was not a *necessary* step, as "all buildings and structures on the property were covered," but that FUMIC "liked to see those buildings to which people were coming and going specifically identified." With Hileman's approval, Wilhelm submitted the application, both men believing that coverage had been obtained for the entire property. Hileman signed the application on PPA's behalf on May 1, 2001, the closing date for the purchase of the complex.

¶5 The policy was renewable annually, and PPA renewed its policy each year without any further inquiry as to the amount or scope of coverage. In 2005, Wilhelm retired, and his practice was assumed by Monte Sparby. PPA continued to renew through Sparby. Also in 2005, a reference to "BOP-54" was inserted into the policy. BOP-54, an "amendatory endorsement," was included in a long list of other such endorsements on the renewal declaration. BOP-54 stated that the policy, as modified by the endorsement, covered only those buildings and structures separately listed on the Declarations page for which a limit of coverage was shown.

¶6 On February 10, 2008, heavy snow fell throughout the Whitefish area. But while the conditions were wonderful for the ski hill, they dealt a fatal blow to PPA's carport,

4

which collapsed under a massive accumulation of snow and ice, burying numerous vehicles. Hileman submitted a claim under PPA's policy for the damages, and FUMIC claims adjuster Rial Gunlikson responded that the loss was covered. Shortly thereafter, however, Gunlikson contacted Hileman to inform him that the carport was in fact *not* covered by the policy. Gunlikson stated that the change in policy due to the adoption of BOP-54 had excluded the carport as of 2005.

¶7 On April 4, 2008, after speaking with Gunlikson, Hileman wrote to FUMIC and demanded payment on the claim or a written explanation of why coverage was being denied. Four days later, Hileman received a letter in response from Thomas E. Barker, Assistant Vice President of FUMIC's claims department. Barker reiterated Gunlikson's assertions, explaining that the carport was not listed separately on the Declarations page, and due to BOP-54's exclusion of "buildings for which no limit of insurance is shown in the Declarations," the carport had not been covered since 2005. Having never heard of the endorsement, Hileman contacted Sparby and met with him at Sparby's office, where the file for PPA was kept. BOP-54 was not in the file dedicated to PPA, nor was any notice that the coverage for PPA was being reduced to exclude the carport. The parties dispute whether notice of BOP-54 was ever provided to Hileman or Sparby besides its incorporation by reference on the declaration renewal. Sparby and Wilhelm attest that it was their practice to keep copies of any official communication between FUMIC and insureds, which would have included changes to the policies, and FUMIC employees testify that it was their practice to send out copies of any new endorsements to the insured

5

parties. No parties have specific records or memories of correspondence concerning BOP-54.

¶8 On November 13, 2008, PPA filed suit in Cascade County, naming FUMIC and Wilhelm as defendants. FUMIC moved to change venue to Flathead County based on the convenience of witnesses, notably Wilhelm, who was suffering from various health problems. The Cascade County District Court granted FUMIC's motion on February 26, 2009, over PPA's objection, and the Flathead County District Court assumed jurisdiction. After several months of pre-trial activity, FUMIC moved for summary judgment. It argued that the policy listed only the apartment building and laundry building on the Declarations page as insured premises and that the carport was therefore never covered. Wilhelm also moved for summary judgment, arguing that he was no longer working at the agency at the time the current policy was renewed and was thus not a proper party to the suit, and that PPA's request for full coverage was not sufficiently specific to give rise to a duty on his part to insure the carport.

¶9 PPA filed a cross-motion for summary judgment. In its brief opposing FUMIC's motion and in support of its own, PPA argued that the plain language of the policy covered all buildings and structures at the address listed on the Declarations page. At best, PPA maintained, the policy contained contradictory definitions of the "insured premises," creating an ambiguity which must be construed in favor of coverage. PPA also sought summary judgment against Wilhelm, contending that if the carport was *not* covered, then Wilhelm's negligent failure to procure coverage subjected him and FUMIC

6

to liability. After the briefing of these motions, PPA amended its complaint to add MFU as a party, alleging that MFU was vicariously liable for Wilhelm's negligence.

¶10 Argument was heard on all of the above motions on December 10, 2009. Several months later, the District Court entered an order granting the defendants' motions for summary judgment and dismissing all of PPA's claims. The District Court held that the "language of the policy was clear and unambiguous and provided for coverage of the property described in the Declarations," and because the carport was not listed, it was not covered. The District Court also held that Wilhelm had no duty to provide coverage for the carport absent a specific request that the carport be insured, and that PPA's request for full coverage was "not sufficiently specific to give rise to a duty." The District Court did not reach the issue of the amendatory endorsement, as it concluded that no coverage had ever existed on the carport. The District Court also did not reach the issue of whether FUMIC or MFU was liable for Wilhelm's negligence as it did not find Wilhelm negligent. PPA timely appealed.

**STANDARD OF REVIEW**

¶11 We review a district court's grant or denial of a motion for summary judgment de novo. *State v. Butte-Silver Bow County*, 2009 MT 414, ¶ 17, 353 Mont. 497, 220 P.3d 1115. Applying the criteria contained in M. R. Civ. P. 56, we determine whether the moving party has established both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Goettel v. Estate of Ballard*, 2010 MT 140, ¶ 10, 356 Mont. 527, 234 P.3d 99.

7

¶12 The interpretation of an insurance contract is a question of law. *Cusenbary v. U.S. Fid. & Guar. Co.*, 2001 MT 261, ¶ 9, 307 Mont. 238, 37 P.3d 67 (citing *Babcock v. Farmers Ins. Exch.*, 2000 MT 114, ¶ 5, 299 Mont. 407, 999 P.2d 347). When a court reviews an insurance policy, it is bound to interpret its terms according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products. *Counterpoint, Inc. v. Essex Ins. Co.*, 1998 MT 251, ¶ 13, 291 Mont. 189, 967 P.2d 393. Exclusions from coverage are to be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy. *Swank Enters., Inc. v. All Purpose Servs., Ltd.*, 2007 MT 57, ¶ 27, 336 Mont. 197, 154 P.3d 52.

¶13 When an insurance policy is ambiguous, it is to be interpreted most strongly in favor of the insured and any doubts as to coverage are to be resolved in favor of extending coverage for the insured. *Mitchell v. State Farm Ins. Co.*, 2003 MT 102, ¶ 26, 315 Mont. 281, 68 P.3d 703. An ambiguity exists where the insurance contract, taken as a whole, is reasonably subject to two different interpretations. *Id.*

## DISCUSSION

¶14 The parties agree on the material facts, and thus the instant case presents only questions of law. At issue is whether PPA's insurance policy included coverage for the carport, and if not, whether Wilhelm was negligent in not procuring such coverage. If the policy did include coverage for the carport, of course, we will not reach the issue of Wilhelm's negligence. Thus, we must determine whether the District Court's interpretation of the insurance contract was correct. We first note that because FUMIC

8

contends that the coverage was not affected by the amendatory endorsement (BOP-54), we will consider the language of the contract as unmodified by the endorsement, and will not inquire into whether the carport would have been covered but for modifications to coverage made by the endorsement.

¶15    FUMIC's fundamental argument is that only buildings and structures listed on the Declarations page are covered by the policy, and because the carport is not listed, it is not covered.    FUMIC points to language in the Businessowner's Coverage Form, the operative policy document, in support of this contention.  The Form provides,

> **Covered Property.**    Covered property includes Buildings as described under Paragraph a. below . . . **a.** ***Buildings, meaning the buildings and structures at the premises described in the Declarations***, including: (1) Completed additions; (2) Fixtures, including outdoor fixtures; (3) Permanently installed: (a) Machinery; and (b) Equipment; (4) Your personal property in apartments, rooms or common areas furnished by you as landlord; . . . ." [Emphasis added.][1]

FUMIC ties this definition to the Declarations page, which contains the following section:

> INSURED PREMISES:
>
> LOC #          BLDG #        ADDRESS IF DIFFERENT FROM ABOVE
> BUSINESS DESCRIPTION: APARTMENT - 24 UNITS
> 1              1                    601 PARK AVENUE
>                                     WHITEFISH MT 59937
>
> BUSINESS DESCRIPTION: LAUNDRY ROOM & STORAGE
> 1              2                    601 PARK AVENUE
>                                     WHITEFISH MT 59937

---

[1] The language in the 2001 form differs slightly from the language in the 2007-08 form.  The language reprinted above is from the 2007-08 form.  Neither party argues that the difference in language is material.

¶16    As the carport is not listed under the "insured premises" section in the Declarations, FUMIC maintains, it is not covered by the policy, which is limited to "the buildings and structures at the premises described in the Declarations." The District Court concurred with this argument. In its opinion accompanying the grant of FUMIC's motion for summary judgment, the lower court reasoned:

> The language of the insurance contract at issue here is clear and unambiguous. The Business Owner's Coverage Form, which is the basic policy form, provides that property, whether it is personal property or a building, is covered if it is at the premises described in the Declarations. The Declarations page describes the property insured as two buildings, the 24 unit apartment building and a building containing laundry facilities and storage space. There is no mention of the carport . . . .

¶17    The lack of coverage, argues FUMIC, is confirmed by the fact that no limit of insurance is listed for the carport. FUMIC observes that the Businessowner's Coverage Form provides that covered property only includes property "for which a Limit of Insurance is shown in the Declarations . . . ."[2] As no limit of insurance is separately listed for the carport, FUMIC asserts, the carport is not included in the policy. The District Court also found this argument convincing. It held, "[a]dditionally, the policy provides for limits of coverage for the apartment building and the laundry building, but not the carport. If the carport was covered because it is a part of the premises at 601 Park Avenue, then there would be a limitation of coverage for it."

¶18    PPA refutes both of these arguments. It contends that the insured premises are defined as the property address, and that in any case, the limit of insurance for the

---

[2] This language is from the 2001 form; the 2007-08 form provides that "Covered Property includes Buildings . . . Business Personal Property . . . or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property."

10

apartment building included the carport. At best, PPA contends the policy is ambiguous, and it is entitled to judgment because ambiguities must be resolved in favor of greater coverage, not lesser coverage.

¶19 We agree with PPA that whether the carport is covered by the policy is at best ambiguous, and that this ambiguity entitles PPA to an entry of judgment in its favor. Based on the reasoning set out below, we conclude that the carport was covered by the policy, as of the date of the purchase of the policy, as a matter of law. We will thus not reach the issue of Wilhelm's negligence or of FUMIC or MFU's responsibility for Wilhelm's actions.

¶20 Our initial inquiry concerns whether the carport is logically included in the definition of the insured premises. The definition of "covered property" in the Businessowners' Coverage Form includes "buildings, meaning the buildings and structures at the premises described in the Declarations . . . ." The logic behind FUMIC's interpretation of this phrase does not stand up to scrutiny. FUMIC contends, in essence, that the phrase means that coverage is limited to the *buildings and structures described in the Declarations*, as opposed to buildings and structures *at the premises described in the Declarations*. FUMIC's interpretation skips over the words "at the premises" in the definition of covered property, and would render them meaningless. It is a basic rule of construction that we must, if at all possible, interpret a contract so as to give effect to every part of the contract. *Milltown Addition Homeowner's Ass'n v. Geery*, 2000 MT 341, ¶ 11, 303 Mont. 195, 15 P.3d 458 (citing § 1-4-101, MCA). FUMIC's interpretation requires that the words "described in the Declarations" refer only to the "buildings and

11

structures," and not "the premises." PPA's interpretation of the phrase—that coverage extends to all buildings and structures which are at the premises described in the Declarations—strikes us as the more reasonable interpretation. If FUMIC's interpretation is correct, it is certainly not unambiguously so.

¶21 The Declarations provide no clarity on the matter. On the first page, the subsection entitled "insured premises" contains data fields for "LOC #" (location number) and "BLDG #" (building number), and lists two buildings: (1) the apartment building at 601 Park Avenue and (2) the laundry/storage building at 601 Park Avenue. The section titled "insured premises" does not list a street address as "the premises," instead only listing the two buildings, each with separately stated (although identical) addresses. This seems to lend credence to FUMIC's interpretation. On page three of the same document, however, the following language appears: "PREMISES: AS PER LOCATION ADDRESS(S) SHOWN ON THE DECLARATION." PPA advances this definition of the premises as the operative one. Yet it is located at the end of the "forms/endorsements applicable" section, and it is unclear why insured premises would be defined anywhere besides the "insured premises" section. Moreover, it is unclear whether the definition is meant to apply to the entire policy, or only to endorsement "BO211—Limit. Cov. to Desg. Prem." listed immediately above it. In sum, it is unclear what exactly the "premises: as per location address" is meant to signify, especially as it is common practice to define the scope of coverage simply by stating the address of the premises.

¶22 It *is* clear, however, that the "insured premises" cannot be limited *only* to the buildings listed in the "insured premises" section, as coverage very clearly extends

beyond the buildings specifically listed in this section—for example, the policy covers machinery, equipment, and outdoor fixtures on the property, despite the fact that those items are not listed on the Declarations page and do not have a separate limit of insurance listed. This is underscored by the fact that only buildings would be specifically listed in the Declaration's "insured premises" section, as the section asks for "BLDG #". As FUMIC's policies are obviously not necessarily limited to buildings alone, the "insured premises" section cannot be interpreted to set out the full scope of coverage.

¶23    If the "premises" are rightly considered to be "as per location address," as PPA asserts, then the carport would be covered because the Businessowner's Policy states that coverage includes "buildings and structures at the premises." But the location of this definition—*not* in the "insured premises" section, and arguably only intended to describe a specific endorsement—severely weakens this interpretation.

¶24    While we need only conclude that the policy is ambiguous to decide the resolution of the present case, we note that the most reasonable interpretation, in our view, is that the portion of the policy attributable to the apartment building is meant to include the carport. Thus, the carport is "listed" on the Declarations page by virtue of the listing of the apartment building. As an initial matter, it is doubtful that a carport is considered a "building" at all. The Businessowners' coverage form states that "although the words 'building' and 'structure' are not defined in the coverage form, a structure may be thought of as property erected on and attached to land that is not walled and roofed and a building is generally thought of as a walled, roofed structure." The "insured premises" section of the Declarations page on which FUMIC places so much weight asks only for

buildings, not structures, and thus the carport's omission from the section is not as important as it is in FUMIC's analysis. Furthermore, Wilhelm testified that attached structures such as the carport are often accounted for by simply stating the buildings to which they are attached on the Declarations page. While the carport here was not physically attached, it was located very close to the building and it seems logical that it was considered an add-on to the apartment building.

¶25 This conclusion finds support in the appraisal which accompanied the initial purchase of the complex, which included a specific amount for the carport. The carport's value was estimated at $46,200, which was then accounted for in the total value of the apartment building, estimated at $750,000. FUMIC asserts that no coverage existed because a limit of insurance for the carport was not separately stated on the Declarations page. But as the apartment building was insured for $750,000, an amount which included the full value of the carport, it stands to reason that the carport was covered in the $750,000 policy purchased by PPA. The carport would not be separately listed on the Declarations page if the apartment building was already insured for an amount which included the value of the carport, as this would lead to an illogical "doubling-up" of coverage. FUMIC's contention that PPA would have had to pay an additional premium were it to have insured the carport is similarly unpersuasive. As detailed above, the apartment building was insured for a dollar amount which included the value of the carport, and premiums are calculated based on the total amount insured, not the number of buildings insured.

¶26    We are also convinced that the policy is at best ambiguous because all external evidence supports PPA's position rather than FUMIC's. We note three such pieces of evidence here. First, FUMIC's interpretation of the policy would lead to the unsupportable conclusion that the adoption of BOP-54 had no effect whatsoever on the very aspects of the policy which it was intended to modify. Second, the understanding, intent, and actions of the parties involved simply do not support FUMIC's version of events. Third, and perhaps most convincingly, FUMIC's own internal guidelines would not even permit the sale of the policy which FUMIC claims was issued here.

¶27    First, FUMIC's contention that the carport was *never* covered and that BOP-54 therefore did not reduce coverage does not withstand logical scrutiny. There would have been no reason for BOP-54 to be created and added to the policy if its principal goal was not accomplished—to add, under "Property Not Covered" in the Businessowners Coverage Form, "Buildings for which no limit of insurance is shown in the Declarations." If there were any doubt that this changed the policy, the language in BOP-54 clears up any such doubts, stating that "THIS ENDORSEMENT CHANGES THE POLICY," and that "[t]his endorsement modifies insurance provided under the . . . Businessowners Coverage Form." Given that BOP-54 modified the policy to provide that only "buildings for which a limit of insurance is shown in the Declarations" are covered, it follows that prior to BOP-54's adoption, at least some buildings for which *no* limit of insurance was shown in the Declarations *were* covered by the policy. This inference sweeps the legs out from underneath FUMIC's argument that the policy *always*

15

limited coverage to buildings for which a limit of insurance was separately stated in the Declarations.

¶28    Second, the actions of FUMIC's own employees illustrate how disingenuous it is for FUMIC to now claim that coverage for the carport never existed. Rial Gunlikson, FUMIC's claims adjuster on this case, initially informed Hileman that the carport was covered, but then stated that the carport was in fact *not* covered, *due to a change in the policy*. When Mr. Hileman demanded that FUMIC identify why, exactly, the carport was not covered by the policy, FUMIC's Vice President Thomas Barker explained that BOP-54 had modified the policy to exclude buildings for which no limit of insurance was shown. Not until much later, presumably when legal problems surrounding the requirement to provide notice of any reduction in coverage were discovered, did FUMIC ever contend that the original policy did not include coverage for the carport.

¶29    Furthermore, the intent of Hileman and Wilhelm was clearly to include the entire property in the policy, and the understanding of both Hileman and Wilhelm was that coverage had been secured for the entire property. As Wilhelm agreed, it would have been illogical and without precedent to insure both of the other buildings on the property but not the carport. According to Hileman, when he inquired as to why the laundry building was separately stated on the original application, Wilhelm responded that all buildings and other structures on the property were covered and that it would not be necessary to separately list the buildings, but that FUMIC "liked to see those buildings to which people were coming and going specifically identified." Wilhelm testified that he never would have intentionally insured a property without insuring the entire property,

16

never would have excluded a building without specifically mentioning it to the insured, and that he assumed the carport was covered. Hileman obviously intended to procure coverage for the entire property, and both he and his insurance agent believed he had done so.

¶30 No common sense interpretation of the request made of Wilhelm to procure coverage for Hileman's property would possibly exclude the carport in the scope of coverage requested. A "reasonable consumer of insurance products," from whose perspective we must analyze the terms of the policy, could not possibly conceive that the carport would be excluded after requesting normal, standard businessowners' coverage for the property. The authorities relied on by FUMIC and the District Court suggesting that Hileman needed to *specifically* request insurance for the carport are simply inapposite to scenarios such as the instant case, where *all* standard commercial property insurance products would include the carport in coverage of the complex. It quite literally went without saying that the parties intended the carport to be included in the policy.

¶31 Lastly, FUMIC's own internal guidelines for commercial policies *would not even permit* the issuance of the policy which was allegedly sold to Hileman. FUMIC's Businessowners Policy Manual states that coverage must be included for all buildings on the property:

1. MANDATORY COVERAGES

    A. The Businessowners Policy must be written to provide:

> (1) Coverage on All business building and personal property, except property that may not be eligible which is located at the same premises or premises elsewhere.

The hyper-legalistic view espoused by the District Court that specifically listing two of the three "buildings" on the property omitted the third by inference cannot withstand scrutiny in light of this simple fact. FUMIC does not offer policies which do not do insure all buildings on a commercial property, and being a longtime FUMIC commercial insurance customer, Hileman cannot be faulted for interpreting the terms of the insurance policy as conforming to the guidelines of all other FUMIC policies.

¶32 The insurance policy is much more reasonably interpreted to include coverage for the carport. But we need not go this far—we need only conclude that the contract was ambiguous in the eyes of a reasonable consumer of insurance products. It is a sisyphean task even for a trained professional to determine the precise scope of coverage from the policy's confusing and contradictory provisions. As any ambiguity in an insurance policy must be construed in favor of extending coverage, and as an ambiguity exists "where the contract . . . is reasonably subject to two different interpretations," we conclude that PPA's policy must be interpreted to include coverage for the carport as a matter of law. *Mitchell*, ¶ 26.

¶33 We reverse the District Court's grant of summary judgment to FUMIC. Given our resolution of this issue, we do not reach the other issues presented for review.

¶34 Reversed and remanded for entry of summary judgment in favor of PPA.

/S/ W. WILLIAM LEAPHART

18

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE