DA 10-0351

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 208

STEPHEN G. STEADELE and
DAWN R. STEADELE,

        Plaintiffs and Appellants,

   v.

COLONY INSURANCE COMPANY,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-09-686
Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

        Torrance L. Coburn (argued), Tipp & Buley, P.C., Missoula, Montana

        For Appellee:

        Oliver H. Goe (argued), Christy S. McCann, Jason B. Jewett, Browning,
Kaleczyc, Berry & Hoven, P.C., Helena, Montana

Argued and Submitted:  April 6, 2011

Decided:  August 30, 2011

Filed:

_____
                 Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Stephen and Dawn Steadele (the Steadeles) filed this action against Colony Insurance Company (Colony) to recover on a default judgment they were awarded against Montana Component Housing Corp. (MCHC), Colony's insured. The District Court for the Fourth Judicial District, Missoula County, denied the Steadeles' Motion for Partial Summary Judgment and granted Colony's Cross Motion for Summary Judgment. The Steadeles appeal. We affirm.

¶2     The Steadeles raise two issues on appeal which we have restated as follows:

¶3     1.   Whether the District Court erred in granting summary judgment to Colony based upon MCHC's failure to notify Colony of the Steadeles' claim.

¶4     2.   Whether the District Court erred in finding that genuine issues of material fact precluded granting the Steadeles' Motion for Partial Summary Judgment.

¶5     Because we find the first issue to be dispositive of this case, we do not address the second issue.

## Factual and Procedural Background

¶6     In 2007, the Steadeles contracted with MCHC and Custom Comfort Homes Corp. to construct a single-family home on property the Steadeles owned in Missoula County. Both corporations were owned and operated by Kim Powell. MCHC was to build the home in several sections at its warehouse in Anaconda. The sections would then be shipped to the Steadeles' property where they would be assembled. Under the terms of the contract, the home was to be completed by the end of November 2007. However, MCHC did not complete the home by the November 2007 deadline, and work continued

2

on the home into March 2008. Eventually, MCHC abandoned the project without completing the home.

¶7 In the underlying cause of action, the Steadeles complained that MCHC was negligent in many aspects of its work. They contended that the wrong insulation was used in constructing the home causing it to be less energy efficient than intended; that the wrong screws were used on the exterior walls causing the screws to rust and to leave rust stains on the home's finish; and that the foundation was placed in the wrong location on the property. Most particularly, the Steadeles contended that MCHC negligently allowed portions of the home to be exposed to the elements which in turn caused mold to grow and spread throughout the entire home. Due to this mold, the home had to be stripped down to the foundation and rebuilt using new materials.

¶8 The Steadeles filed suit in the Fourth Judicial District Court after determining that neither MCHC nor Powell were willing to rectify the situation. Although they were properly served, MCHC and Powell failed to respond to the suit and a default judgment was entered against them on December 9, 2008, in the amount of $1,879,204.54. This amount consisted of $532,527.68 in actual damages suffered by the Steadeles as a result of MCHC's negligence and breaches of contract; $9,319.50 in actual damages suffered by the Steadeles as a result of MCHC's willful acts of conversion; $1,083,694.36 in additional damages as allowed by the Montana Consumer Protection Act; punitive damages in the amount of $250,000.00; and $3,663.00 for the Steadeles' attorney's fees and costs.

3

¶9 In February 2009, after securing judgment against MCHC, the Steadeles contacted Colony requesting payment of the judgment. Colony had provided Commercial General Liability Insurance coverage to MCHC from October 1, 2007, through March 29, 2008, when the policy was cancelled due to nonpayment. Because MCHC never notified Colony of the Steadeles' claim against MCHC, Colony never appeared on behalf of MCHC during the pendency of the action. Consequently, Colony denied coverage and refused to pay. As a result, the Steadeles filed the present action.

¶10 In their Complaint, the Steadeles argued that Colony's refusal to issue payment on the underlying judgment was a violation of § 33-18-201, MCA, which prohibits unfair claim settlement practices. Colony asserted in its Answer that there is no coverage for the Steadeles' claim under the policy.

¶11 On November 3, 2009, the Steadeles filed a Motion for Partial Summary Judgment wherein they alleged that it is undisputed that the $532,527.68 in actual damages suffered by the Steadeles and awarded to them by the District Court is covered by the insurance policy Colony issued to MCHC. In response, Colony filed a Cross Motion for Summary Judgment wherein it argued that its insured, MCHC, failed to notify Colony of the claim against MCHC which gave rise to the Steadeles' suit against Colony. Colony maintained that this failure to notify resulted in actual and substantial prejudice to Colony thereby absolving Colony of its obligation to provide coverage to MCHC and to pay on the Steadeles' claim.

¶12 In its June 3, 2010 Order and Memorandum, the District Court concluded that a factual dispute existed as to when the damage to the Steadeles' home occurred and

4

whether it was within the coverage period of the insurance policy. Hence, the court denied the Steadeles' Motion for Partial Summary Judgment. The court also concluded that there was no factual dispute that MCHC failed to comply with the terms of the insurance policy when it failed to provide Colony with notice of the underlying claim and suit. And, because MCHC failed to notify Colony, there was no coverage for MCHC under the policy, Colony did not have a duty to defend MCHC, and the Steadeles' claim failed as a matter of law. Hence, the court granted Colony's Cross Motion for Summary Judgment.

¶13 The Steadeles appeal the District Court's order granting Colony's Cross Motion for Summary Judgment as well as the court's order denying the Steadeles' Motion for Partial Summary Judgment.

**Standard of Review**

¶14 We review a district court's grant or denial of a summary judgment motion *de novo*. *Lee v. Great Divide Ins. Co.*, 2008 MT 80, ¶ 9, 342 Mont. 147, 182 P.3d 41 (citing *Farmers Union Mut. Ins. Co. v. Horton*, 2003 MT 79, ¶ 10, 315 Mont. 43, 67 P.3d 285). Under M. R. Civ. P. 56(c), summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Moreover, the party moving for summary judgment has the initial burden of proving that no genuine issues of material fact exist. *See Roy v. Blackfoot Telephone Co-op.*, 2004 MT 316, ¶ 11, 324 Mont. 30, 101 P.3d 301. The burden then shifts to the non-moving party to prove by more than mere denial and speculation that a genuine issue of material fact does exist. *Roy*, ¶ 11. However, the fact that both parties moved for summary

5

judgment does not establish the absence of genuine issues of material fact. *Hajenga v. Schwein*, 2007 MT 80, ¶ 18, 336 Mont. 507, 155 P.3d 1241 (citing *Montana Metal Buildings Inc. v. Shapiro*, 283 Mont 471, 477, 942 P.2d 694, 698 (1997)). We must evaluate each motion on its own merits and take care in each instance to draw all reasonable inferences against the party whose motion is under consideration. *Hajenga*, ¶ 18 (citing *Ike v. Jefferson Nat. Life Ins. Co.*, 267 Mont. 396, 399-400, 884 P.2d 471, 473-74 (1994)).

## Discussion

¶15 *Whether the District Court erred in granting summary judgment to Colony based upon MCHC's failure to notify Colony of the Steadeles' claim.*

¶16 The Steadeles argue on appeal that the District Court erred when it determined that MCHC's failure to notify Colony of the Steadeles' claim precluded recovery by the Steadeles for the damages caused by MCHC's negligence. The Steadeles maintain that an insured's failure to notify its insurer does not prevent an injured third-party claimant from being compensated by the insurer for the claimant's damages. They further maintain that because they were not parties to the insurance contract, they have no duty under that contract to provide notice to Colony.

¶17 Colony argues on the other hand that summary judgment in its favor was appropriate here because the undisputed facts show that MCHC's failure to notify Colony of the occurrence, claim or even the judgment against it in the underlying suit, was a material breach of MCHC's obligations under the policy. Colony further argues that

MCHC's breach resulted in severe prejudice to Colony and terminated Colony's obligation to indemnify MCHC.

¶18    This Court has repeatedly held that general rules of contract law apply to insurance policies and that we will construe those policies strictly against the insurer and in favor of the insured. *Travelers Cas. v. Ribi Immunochem Research,* 2005 MT 50, ¶ 17, 326 Mont. 174, 108 P.3d 469.  Moreover, the interpretation of an insurance contract is a question of law. *Park Place Apartments v. Farmers Union*, 2010 MT 270, ¶ 12, 358 Mont. 394, 247 P.3d 236 (citing *Cusenbary v. U.S. Fidelity and Guar. Co.*, 2001 MT 261, ¶ 9, 307 Mont. 238, 37 P.3d 67; *Babcock v. Farmers Ins. Exchange*, 2000 MT 114, ¶ 5, 299 Mont. 407, 999 P.2d 347).  When a court reviews an insurance policy, it is bound to interpret its terms according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products. *Park Place*, ¶ 12 (citing *Counterpoint, Inc. v. Essex Ins. Co.*, 1998 MT 251, ¶ 13, 291 Mont. 189, 967 P.2d 393).  Exclusions from coverage are to be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy. *Park Place*, ¶ 12 (citing *Swank Enterprises v. All Purpose Services*, 2007 MT 57, ¶ 27, 336 Mont. 197, 154 P.3d 52).

¶19    When an insurance policy is ambiguous, it is to be interpreted most strongly in favor of the insured and any doubts as to coverage are to be resolved in favor of extending coverage for the insured. *Park Place*, ¶ 13 (citing *Mitchell v. State Farm Ins. Co.*, 2003 MT 102, ¶ 26, 315 Mont. 281, 68 P.3d 703).  An ambiguity exists where the insurance contract, taken as a whole, is reasonably subject to two different

7

interpretations. *Park Place*, ¶ 13 (citing *Mitchell*, ¶ 26). However, when the language of a policy is clear and explicit, the policy should be enforced as written. *United Nat. Ins. v. St. Paul Fire & Marine*, 2009 MT 269, ¶ 12, 352 Mont. 105, 214 P.3d 1260 (citing *National Cas. Co. v. American Bankers*, 2001 MT 28, ¶ 13, 304 Mont. 163, 19 P.3d 223). We cautioned in *Travelers* that courts should not "seize upon certain and definite covenants expressed in plain English with violent hands, and distort them so as to include a risk clearly excluded by the insurance contract." *Travelers*, ¶ 17 (quoting *Johnson v. Equitable Fire & Marine Ins. Co.*, 142 Mont. 128, 131, 381 P.2d 778, 779 (1963)).

¶20    Section IV of the insurance policy in the present case sets forth certain "Commercial General Liability Conditions" including the following:

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**
   a. *You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.* To the extent possible, notice should include:
   (1) How, when and where the "occurrence" or offense took place;
   (2) The names and addresses of any injured persons and witnesses; and
   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
   b. *If a claim is made or "suit" is brought against any insured, you must:*
   (1) Immediately record the specifics of the claim or "suit" and the date received; and
   (2) *Notify us as soon as practicable.*
   *You must see to it that we receive written notice of the claim or "suit" as soon as practicable.*
   c. *You and any other involved insured must:*
   (1) *Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";*
   (2) *Authorize us to obtain records and other information;*
   (3) *Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and*

8

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply. [Emphasis added.]

¶21 This notice is in plain English; it is simple, clear, unambiguous and easy to understand. It sets forth MCHC's duty to notify Colony "as soon as practicable" of an occurrence, an offense which may result in a claim, or if suit is brought against MCHC. This notice provision was intended to provide Colony the opportunity to defend its interests and to prevent or mitigate adverse judgments.

¶22 Notice provisions in insurance policies have been evaluated and considered by this Court as far back as 1925. In *LaBonte v. Mutual Fire & Lightning Ins. Co.*, 75 Mont. 1, 12, 241 P. 631, 635 (1925), this Court held that a notice requirement in an insurance policy "is a condition precedent, and failure to comply therewith will bar a recovery under the policy, unless the condition is waived by the company." And, in *Riefflin v. Hartford Steam Boiler Inspection & Ins. Co.*, 164 Mont. 287, 293, 521 P.2d 675, 678 (1974), we upheld the lower court's judgment that "failure of the [insureds] to submit notifications of accident and proof of loss to [the insurer] as soon as practicable, as required by the policy, barred any claims for reimbursement . . . ."

¶23 It is undisputed in this case that MCHC failed to notify Colony of the occurrence, the claim or the suit. Colony's first notice was the letter it received from the Steadeles' counsel, more than two months after default judgment had been entered against MCHC, seeking payment from Colony for the amounts set forth in the judgment. In addition, the evidence indicates that the Steadeles knew that MCHC held an insurance policy issued by

9

Colony prior to filing suit. While it is true that the Steadeles had no duty to notify Colony of the insured's claim, the Steadeles possessed the ability to avoid the effects of this violation of the terms of the policy—where it was clear that MCHC had not notified its insurance carrier—by simply notifying Colony themselves when it was apparent that MCHC was not going to appear. If the whole idea was to obtain insurance coverage for the loss, then it would make sense that the insurer be notified early in the case.

¶24 Nevertheless, the Steadeles argue that an insured's failure to notify its insurer does not prevent an injured third-party claimant from being compensated by the insurer for the claimant's damages. Contrary to the Steadeles' contentions, however, their claim against Colony depends entirely on the existence of insurance coverage for the damages the Steadeles' sustained due to MCHC's actions.

¶25 The scope of an insurer's duty to defend its insured, and of the coverage of the policy in general, is determined by the language of the insurance policy. *Grimsrud v. Hagel*, 2005 MT 194, ¶ 34, 328 Mont. 142, 119 P.3d 47. If there is no coverage under the terms of the policy based on the facts contained in the complaint, there is no duty to defend. *Grimsrud*, ¶ 34.

¶26 We applied this principle to third-party claims for coverage in *Truck Ins. Exchange v. Waller*, 252 Mont. 328, 334-35, 828 P.2d 1384, 1388 (1992). There we determined that third-party claimants could not allege a bad faith claim against an insurer if no coverage existed under the policy. We concluded in *Truck Ins. Exchange* that where an insurance policy excludes coverage, a third party's bad faith claim fails as a matter of law. *Truck Ins. Exchange*, 252 Mont. at 334-35, 828 P.2d at 1388.

10

¶27 In addition to the notice requirements in the insurance policy in this case, Section IV of the policy provides:

> **3. Legal Action Against Us**
> *No person or organization has a right under this Coverage Part*:
> a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or
> b. *To sue us on this Coverage Part unless all of its terms have been fully complied with.*
> A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative. [Emphasis added.]

Based on the foregoing language, the Steadeles' status as injured third-party claimants makes no difference since the policy itself makes clear that "[n]o person or organization has a right" to bring Colony into a suit asking for damages from an insured "unless all of [the policy's] terms have been fully complied with." As already indicated, there is no dispute that the policy's terms were not fully complied with in this case since Colony was not notified of the underlying claim.

¶28 The Steadeles suggest that holding in favor of Colony on the question of notice would provide a huge incentive for insurers to encourage non-reporting by their insureds in order to escape liability. However, this contention ignores the fact that insured parties have an even greater incentive to notify insurance companies of claims because having the insurance company provide a defense and indemnify the insured against loss is the chief reason for purchasing insurance. In this case, because Colony did not receive notice of the claim, Colony was prejudiced in that it was deprived of the ability to investigate, to

11

locate witnesses, to appoint counsel, to engage in discovery, to negotiate a settlement, and to develop a trial strategy.

¶29 Finally, we observe that this is not a case where the insured failed to notify its carrier by a few days or where the failure to notify was *de minimis*. Rather, here, MCHC failed to notify Colony for months after having been served with the Steadeles' summons and complaint.

¶30 Accordingly, we hold that the District Court did not err in granting Colony's Cross Motion for Summary Judgment based upon MCHC's failure to notify Colony of the Steadeles' claim.

¶31 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JIM RICE