JUSTICE WHEAT
delivered the Opinion of the Court.
¶1 Jan Gregson and James Gleason, as co-personal representatives of the Estate of Judith Gleason (the Estate), appeal from various rulings by the First Judicial District, Lewis and Clark County. Defendant Central United Life Insurance, Co. (CULI) cross-appeals. We affirm in part, reverse in part, and remand for a new trial consistent with this opinion.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 In 1990, Judith Gleason (Judith) purchased a cancer benefit insurance policy from Colonial Life & Accident Insurance Company, with an effective date of coverage of February22,1990. In March 2002, Judith was diagnosed with breast cancer. She underwent treatment until she died on March 28,2010.
¶3 From the time she purchased the policy until her death, Judith paid all premiums owed. The policy remained in effect when she died in 2010. Judith never submitted a claim on the policy while she lived. After her death, Jan Gregson and James Gleason were named co-personal representatives of her estate (PRs).
*222 ¶4 In 2004, CULI acquired the cancer insurance policy from Colonial Life. CULI began servicing the policy in January 2002, and formally assumed the policy on or about October 1,2004.
¶5 On or about April 5,2010, the PRs submitted a notice of potential claim under the policy to CULI via phone call. The PRs then sent CULI a copy of Judith’s death certificate, which attributed her death to cancer. CULI received the death certificate on April 12,2010. Medical bills and claim forms were sent to CULI in January 2011. On January 24,2011, CULI requested additional documentation related to certain services provided from October2009 through March 2010. On January 25, 2011, CULI issued an explanation of benefits stating that claims not submitted within the policy’s notice period were not payable. The policy required claims to be filed within one year plus 90 days of the date of the claim. The PRs provided additional medical records to CULI in February 2011 and early March 2011.
¶6 On March 17,2011, CULI paid certain claims arising within one year and 90 days prior to January 11,2013, the date the claim forms and medical bills were received by CULL This payment totaled $57,735.95. CULI reiterated that it would not pay for claims submitted outside the policy time limit.
¶7 On April 11, 2011, the PRs advised CULI that the Estate was contesting the denial of the untimely-filed claims. On June 24, 2011, CULI issued payment of a $5,000 death benefit payable under the policy.
¶8 On June 24, 2011, CULI filed a declaratory judgment action in Montana Federal Court. The Estate filed this action in State District Court on July 13, 2011. On December 15, 2011, the Federal Court declined to exercise jurisdiction and the declaratory judgment action was remanded to the State District Court for determination.
¶9 Over the next several months, both parties moved for summary judgment. On July 12, 2012, the District Court issued an order granting the Estate’s motion for partial summary judgment and denying CULI’s motion for summary judgment. In its order, the court ruled that CULI owed payment for the untimely-filed claims, provided it was not prejudiced by the late notice. CULI admitted that it was not prejudiced because if had the information necessary to consider the claims under the policy. The court also ruled that the eight-year statute of limitations on written contracts barred claims for services rendered prior to April 5,2002. This ruling was later amended to bar claims for services rendered prior to April 12,2002.
¶10 In August 2012, CULI discovered that certain other medical expenses incurred within the policy time limit should have been *223 covered. Accordingly, on August 20 and 22, 2012, CULI issued payments to the Estate for those claims. These payments totaled $17,195.28 and included prejudgment interest (calculated at 10% per annum) from March 17,2011 to the date of the payments.
¶11 On January 17, 2013, pursuant to the District Court’s July 12, 2012 order, CULI issued payment to the Estate for the untimely-filed claims. The payment totaled $539,717.90 and included prejudgment interest from March 17, 2011 to the date of the payment. Shortly thereafter, CULI warned the PRs not to distribute the funds because it intended to seek reimbursement of the payment on appeal. The PRs placed the funds in trust pending the outcome of this dispute.
¶12 Prior to trial both parties filed motions in limine. On March 1, 2013, the District Court issued an order on the motions. The court allowed CULI to present testimony about cases decided after its denial of the PRs’ claim in order to “illustrate the unsettled nature of Montana law” with regard to the notice issue. The coral: also allowed the PRs to present testimony regarding CULI’s claim handling in other states and how other insurance companies handle late notice claims in other jurisdictions.
¶13 The case was tried by jury from March 4-8, 2013. On March 4, 2013, prior to the commencement of trial, the court entered a directed verdict in favor of the Estate on the untimely-filed claims for the amount of $539,717.90. The court advised the jury that it had directed a verdict on that issue and that CULI had paid that amount to the Estate.
¶14 At the conclusion of trial the court submitted a special verdict form to the jury. The verdict form directed the jury to determine the amount of additional money CULI owed under the policy, if any, and whether CULI had violated the Montana Unfair Trade Practices Act (UTPA). If the jury found that CULI had violated the UTPA, it was to determine the amount of damages suffered and, if it awarded damages, to consider whether CULI had acted with malice. If the jury found CULI acted with malice it could then determine whether to award punitive damages.
¶15 The jury returned a verdict finding that no additional money was due under the policy. The jury found that CULI had violated the UTPA, but did not award damages. The jury therefore did not consider whether CULI acted with malice.
¶16 Following trial, the District Court awarded trial costs to CULI, finding that it was the prevailing party because the jury had awarded no contract or UTPA damages to the Estate. The District Court awarded attorney’s fees and costs to the Estate for its recovery under *224 the policy.
¶17 The Estate timely appealed and CULI timely cross-appealed. The Estate contends that the District Court erred when it: (a) required proof of UTPA damages in addition to wrongfully denied benefits before allowing the jury to consider malice and punitive damages, (b) failed to grant a directed verdict that CULI violated the UTPA, (c) allowed the jury to consider judicial opinions related to the notice-prejudice rule with regard to whether CULI had a reasonable basis in law to deny the claims, and (d) awarded trial costs to CULI.
¶18 On cross-appeal, CULI maintains the District Court erred when it: (a) applied the notice-prejudice rule and determined that the Estate’s claims were not barred by the polios notice provision, (b) applied the statute of limitations from the time CULI received notice of the Estate’s claims, (c) failed to dismiss the UTPA claim because CULI had a reasonable basis in law to deny the claim, (d) allowed evidence of claim handling practices by other insurers with regard to whether CULI had a reasonable basis in law to deny the UTPA claim, and (e) awarded attorney’s fees and costs to the Estate.
¶19 Because of our holding here, we do not reach several of the issues raised by the parties. We therefore restate the issues on appeal and cross-appeal and address them in the following order:

1. Did the District Court err when it applied the notice-prejudice rule in finding that CULI was liable to the Estate for the untimely - filed claims?

2. Did the District Court err when it instructed the jury that it must first find UTPA damages beyond damages for failure to pay benefits under the policy before considering malice and punitive damages?

3. Did the District Court err by failing to direct a verdict against CULI for violating the UTPA?

4. Did the District Court err when it did not dismiss the UTPA claim because CULI had a reasonable basis in law for denying the untimely filed claims?

5. Did the District Court err by applying the statute of limitations from the date the PRs submitted their claim to CULI rather than from the date suit was filed?

6. Did the District Court err in allowing the Estate to present evidence of out-of-state law and claim handlingpractices that were not directly related to the case at hand and allowing CULI to present evidence of Montana cases related to the notice-prejudice rule?

7. Did the District Court err in awarding trial costs to CULI where 
*225
the jury found that the UTPA was violated and the court entered a directed verdict in favor of the Estate?

8. Did the District Court err in awarding attorney’s fees to the Estate?

STANDARDS OF REVIEW
¶20 We review a district court’s conclusions of law for correctness. Weter v. Archambault, 2002 MT 336, ¶ 18, 313 Mont. 284, 61 P.3d 771. We review a district court's ruling on a motion for summary judgment de novo, applying the same criteria as the district court. Cole v. Valley Ice Garden, L.L.C., 2005 MT 115, ¶ 4, 327 Mont. 99, 113 P.3d 275. We review a district court’s jury instructions to determine whether the instructions, as a whole, folly and fairly instruct the jury on the applicable law. State v. Hudson, 2005 MT 142, ¶ 10, 327 Mont. 286, 114 P.3d 210. The instructions must prejudicially affect a party’s substantial rights to constitute reversible error. Hudson, ¶ 10.
¶21 A district court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. State v. Daniels, 2011 MT 278, ¶ 11, 362 Mont. 426, 265 P.3d 623.
DISCUSSION
¶22 1. Did the District Court err when it applied the notice-prejudice rule in finding that CULI was liable to the Estate for the untimely-filed claims?
¶23 The “notice-prejudice” rule in the realm of insurance law provides that late notice of a claim (i.e., notice outside the time limit established in the written insurance policy) will not preclude coverage unless the insurer can demonstrate that it was prejudiced by the lateness of the notice. We have previously applied elements of the notice-prejudice rule in uninsured and underinsured motorist cases without explicitly adopting the rule. We do so now in the context of first party insurance claims.
¶24 We begin our analysis with the proposition that if an insurance contract’s terms are clear and unambiguous, we will enforce the terms as written unless the term violates public policy. State Farm Mut. Auto. Ins. Co. v. Gibson, 2007 MT 153, ¶ 11, 337 Mont. 509, 163 P.3d 387. However, “a provision that defeats coverage for which valuable consideration has been received violates Montana public policy.” State Farm, ¶ 11.
¶25 In Sorensen v. Farmer’s Ins. Exch., 279 Mont. 291, 927 P.2d 1002 *226 (1996), we considered a situation where an injured motorist, Sorensen, settled a third party claim and executed a release with State Farm (the other driver’s insurer) before bringing an underinsured motorist claim against her own insurer, Farmers Insurance Exchange. Farmers denied coverage, citing a policy provision prohibiting Sorensen from doing anything to prejudice Farmers’ subrogation rights. Farmers argued that by executing the release against the liable parties and State Farm, Sorensen destroyed its subrogation rights and breached the insurance contract.
¶26 Citing a plethora of cases from other jurisdictions, we adopted a “no prejudice” rule, holding that, as a matter of public policy, “denying accident victims indemnification based upon their action which can have no effect on the insurer’s ability to subrogate will not further the purpose of underinsured motorist coverage.” Sorensen, 279 Mont. at 294-296, 927 P.2d at 1004-1005.
¶27 We followed Sorensen with Augustine v. Simonson, 283 Mont. 259, 940 P.2d 116 (1997). In Augustine, we considered “exhaustion” clauses in underinsurance policies. Concluding that such clauses were against public policy, we stated: “[ajbsent some showing of material prejudice to the underinsurance carrier, a claim for underinsured motorist coverage may not be precluded on a technicality.” 283 Mont. at 264, 940 P.2d at 119 (citing Sorensen, 279 Mont, at 295,927 P.2d at 1004).
¶28 In Augustine, while not directly addressing the notice-prejudice rule, we also cited § 28-2-701, MCA, which provides an exception to enforcing an unambiguous contract provision “if that term violates public policy or is against good morals.” 283 Mont. at 263-264, 940 P.2d at 119.
¶29 More recently, in Lee v. Great Divide Ins. Co., 2008 MT 80, 342 Mont. 147, 182 P.3d 41, we upheld a denial of coverage for violation of a notice provision after discussing the ways the late notice had prejudiced the insurer. Lee, ¶¶ 20-21. Such analysis would be unnecessary without the unstated possibility that a lack of prejudice could have compelled a different result. These cases demonstrate our longstanding inclination to require an insurer to establish prejudice by late notice of a claim before we will enforce the coinciding exclusion.
¶30 Additionally, the notice-prejudice rule accords with Montana’s established anti-forfeiture laws. Section 28-1-408, MCA, provides that a contract provision involving a forfeiture “must be strictly interpreted against the party for whose benefit it is created.” Section 28-1-104, MCA, provides that a party in danger of forfeiting the benefits of a contract due to a failure to comply with a provision in the contract “may be relieved from the obligation upon making full compensation *227 to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty.” These statutes are particularly applicable to situations involving failures to comply with time limitations. We have explained that § 28-1-104, MCA, was enacted “for the benefit of obligors whose failure to punctually perform would result in loss to them in the matters in respect to which they have contracted.... The intention of the law under this statute is that a forfeiture should not be needlessly enforced.” Quigley v. Acker, 1998 MT 72, ¶ 31, 288 Mont. 190, 955 P.2d 1377 (quoting Yellowstone County v. Wight, 115 Mont. 411, 417, 145 P.2d 516, 518 (1943)) (emphasis added).
¶31 The statute prevents forfeiture where the party failing to comply with a contract provision can fully compensate the other party for any ipjury caused by the failure. It follows that if the aggrieved party does not suffer injury, no compensation is required to avoid forfeiture except in the case of a grossly negligent, willful, or fraudulent breach of duty, which is not alleged here.
¶32 Thus, in situations where the aggrieved party is not injured by the other party’s failure to comply with a notice provision, the protections provided by the notice-prejudice rule mirror those protections enumerated in our anti-forfeiture statutes. Under the statutes, a party who fails to comply with a time limit provision may avoid forfeiture without compensating the other party unless that other party is injured by the failure. Likewise, under the notice-prejudice rule, an insured who fails to comply with a notice provision may avoid having coverage defeated unless the insurer is prejudiced by the failure.
¶33 On the other hand, if the aggrieved pariy/insurer can show that it was injured/prejudiced by the other party’s failure, neither the anti-forfeiture statute nor the notice-prejudice rule would protect the failing party from forfeiture/defeat of coverage.
¶34 These statutes establish the public policy of Montana that forfeiture should not be enforced absent injury or prejudice. The similarities in both intent and effect between the anti-forfeiture statute and the notice-prejudice rule support our adoption of the latter. In a practical sense, the notice-prejudice rule could be viewed as an application of the anti-forfeiture statute to situations where the potential injury to the aggrieved party — prejudice—cannot be cured by compensation, and thus forfeiture may be avoided only in the absence of injury.
¶35 Additionally, the notice-prejudice rule accords with the well-established contract principle of non-material breach. Generally, a non-breaching party must continue to perform its obligations under a contract unless the breach was material to the contract. The *228 Restatement (Second) of Contracts states: “[t]o the extent that the nonoccurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange.” Restatement (Second) of Contracts, § 229 (1979). A comment further explains what constitutes a “disproportionate” forfeiture:
In determining whether the forfeiture is “disproportionate,” a court must weigh the extent of the forfeiture by the obligee against the importance to the obligor of the risk from which he sought to be protected and the degree to which that protection will be lost if the non-occurrence of the condition is excused to the extent required to prevent forfeiture. The character of the agreement may, as in the case of insurance agreements, affect the rigor with which the requirement is applied.
Restatement (Second) of Contracts, § 229, cmt. b. See also Flaig v. Gramm, 1999 MT 181, ¶ 25, 295 Mont. 297, 983 P.2d 396 (“in order for a breach to justify the injured party’s suspending performance, the breach must be significant enough to amount to the nonoccurrence of a constructive condition of exchange”) (quoting E. Allan Farnsworth, Contracts § 8.16, at 611 (1982)). The notice-prejudice rule is an application of this principle in the insurance context. The rule prevents insurers from suspending performance due to the insured’s failure to comply with the policy notice provision unless the insurer can establish prejudice and thus demonstrate that the failure was material.
¶36 CULI argues that this Court rejected application of the notice-prejudice rule in Steadele v. Colony Ins. Co., 2011 MT 208, 361 Mont. 459, 260 P.3d 145. We disagree. In Steadele we considered a third party claim against an insurer where the insured had failed to provide notice of the claim within the notice requirement in the policy. In our analysis, we first cautioned that “[ejxclusions from coverage are to be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy.” Steadele, ¶ 18. We also noted that prior cases in Montana have treated notice provisions as conditions precedent to coverage. Steadele, ¶ 22 (citing LaBonte v. Mut. Fire & Lightning Ins. Co., 75 Mont. 1, 12, 241 P. 631, 635 (1925); Riefflin v. Hartford Steam Boiler Inspection & Ins. Co., 164 Mont. 287, 293, 521 P.2d 675, 678 (1974)). In upholding the denial of coverage, however, we focused on the fact that the lack of timely notice did in fact prejudice the insurer because “it was deprived of the ability to investigate, to locate witnesses, to appoint counsel, to engage in discovery, to negotiate a settlement, and to develop a trial strategy.” Steadele, ¶ 28. We also explained that the failure to notify in that case *229 was not “de minimus ” Steadele, ¶ 29. These holdings are consistent with application of the notice-prejudice rule.
¶37 By expressly adopting the notice-prejudice rule, we reach the natural conclusion of an ongoing trend in our jurisprudence. See XL Specialty Ins. Co. v. Patrol Helicopters, Inc., 2009 U.S. Dist. LEXIS 118475 (D. Mont.) (affirming XL Specialty Ins. Co. v. Patrol Helicopters, Inc., 2009 U.S. Dist. LEXIS 118580 (D. Mont.) (predicting this Court would apply notice-prejudice rule based on public policy and previous decisions)). Our willingness to adopt the notice-prejudice rule stems not only from public policy concerns, but from anti-forfeiture protection principles codified by the Montana Legislature, and from equitable principles established in contract law. In adopting the rule, we join a vast majority of states that have done the same. See Prince George’s County v. Local Gov’t Ins. Trust, 388 Md. 162, 183, n.9, 879 A.2d 81, 94, n.9 (Ct. App. Md. 2005) (collecting cases). Our decision here reaffirms our commitment to upholding the “fundamental protective purpose” of an insurance contract and ensures that a non-material, technical breach of a notice provision will not deprive the insured of coverage for which valuable consideration has been paid. Steadele, ¶ 18; State Farm, ¶ 11. “[PJublic policy considerations favor adequate compensation, even for non-mandatoiy coverage.” State Farm, ¶ 21.
¶38 [1] To restate: the notice-prejudice rule allows an insurer to deny coverage based on a failure to comply with a policy notice provision only if the insurer can demonstrate that it was prejudiced by the late notice. Here, CULI admitted to the District Court that it was not prejudiced by late notice. The District Court thus found that CULI was prohibited from denying the Estate’s claims on the basis of late notice.
¶39 The District Court’s application of the notice-prejudice rule in this case is hereby affirmed and we formally adopt the notice-prejudice rule in the first party insurance coverage context.
¶40 2. Did the District Court err when it instructed the jury that it must first find UTPA damages beyond damages for failure to pay benefits under the policy before considering malice and punitive damages ?
¶41 The answer to this question hinges on our interpretation of § 33-18-242, MCA, of the UTPA. We hold that when an insurer is found to have violated the UTPA, damages due to denial of claims or delay in payment of claims in breach of the insurance contract may constitute compensatory UTPA damages sufficient to present the question of malice to the trier of fact.
¶42 Section 33-18-242, MCA, provides a cause of action against an *230 insurer for engaging in certain unfair claim settlement practices listed in § 33-18-201, MCA. These practices include the one allegedly committed by CULI: “neglecting] to attempt in good faith to effectuate prompt, fair, and equitablé settlements of claims in which liability has become reasonably clear.” Section 33-18-201(6), MCA. Section 33-18-242(4), MCA, provides that, for violations of § 33-18-201(6), MCA, “[e]xemplaiy [(i.e. punitive)] damages may also be assessed in accordance with 27-1-221.” Section 27-1-221, MCA, allows for the award of punitive damages when a defendant is found to have committed actual malice. Section 27-1-221(1), MCA.
¶43 In its instructions the District Court directed the jurors to determine whether CULI had violated the UTPA and, if so, to determine what damages were caused by CULFs violation. If the jurors determined that CULFs violation did not cause additional damages they were directed not to answer the questions of whether CULI was guilty of actual malice or whether CULFs malicious behavior warranted an award of punitive damages.
¶44 The Estate urges this Court to reverse and remand for a new trial because the District Court’s jury instructions incorrectly required the jury to find UTPA damages in addition to the damages proximately caused by the breach of the insurance contract before it could consider the question of malice. The Estate asks that we clarify the standard and hold that damages arising out of a breach of an insurance contract can simultaneously comprise proximately caused UTPA damages that can give rise to punitive damages if malice is shown.
¶45 CULI maintains that the special verdict form was correct because § 27-1-220(1), MCA, predicates the award of punitive damages on an award of compensatory damages and that § 27-1-220(2), MCA, expressly prohibits an award of punitive damages in actions arising from a breach of contract. CULI asserts that, absent the jury finding specific UTPA damages in addition to the damages resulting from the breach of contract, a jury cannot consider the question of whether the insurer demonstrated malice sufficient to award punitive damages. We disagree.
¶46 Section 27-l-220(2)(a), MCA, prohibits punitive damages in contract cases, “[u]nless otherwise expressly provided by statute....” Section 27-l-220(2)(b), MCA, expressly states, “[s]ubsection (2)(a) does not prohibit recovery of punitive damages in... an action arising under 33-18-201,” the UTPA statute at issue. Section 27-1-220, therefore, does not foreclose the possibility of a recovery of punitive damages in a UTPA action premised on a breach of the insurance contract.
¶47 CULI contends that we settled this issue in its favor by holding in *231 Jacobsen v. Allstate Ins. Co., 2009 MT 248, 351 Mont. 464, 215 P.3d 649, that, even under the UTPA, compensatory damages are a prerequisite to punitive damages. We do not disagree with CULI’s characterization of our holding, but we disagree that the case is applicable to this situation. InJacobsen, a third party (Jacobsen) brought a claim against Allstate for damages arising out of a car accident caused by Allstate’s insured. After a contentious settlement process, Jacobsen filed a complaint against Allstate, seeking compensatory damages for, inter alia, violation of the UTPA and common law bad faith. Jacobsen also sought punitive damages, alleging actual malice. Jacobsen, ¶¶ 2-3. A jury found that Allstate committed common law bad faith and violated the UTPA. As damages, the jury awarded Jacobsen the costs and fees incurred while settling the underlying claim. The jury also found Allstate acted with actual malice and awarded Jacobsen punitive damages. Jacobsen, ¶ 6.
¶48 On appeal, we reversed the award of compensatory damages because, absent a specific exception, neither costs nor attorney’s fees are recoverable compensatory damages in a claim for insurance bad faith. Jacobsen, ¶¶ 18-24. Having reversed the compensatory damages we reversed the award of punitive damages because “without an award of compensatory damages, there can be no award of punitive damages.” Jacobsen, ¶ 67.
¶49 Jacobsen is distinguishable from the case at hand. The question in Jacobsen was, in relevant part, whether costs and attorney’s fees could function as compensatory damages under the UTPA. Here, the question is whether the court’s award of benefits via directed verdict served as an award of compensatory damages sufficient to place the question of punitive damages before the juiy without requiring the establishment of additional damages. Our holding in Jacobsen, therefore, does not support CULFs argument.
¶50 Section 33-18-242, MCA, expressly provides for an award of punitive damages in cases of certain UTPA violations. It does not condition the award of punitive damages on a showing of compensatory damages beyond the damages arising out of the breach of the insurance contract which gave rise to the UTPA action. The purpose of § 33-18-242, MCA, is to provide an additional cause of action, beyond simply an action for breach of contract, where an insurer violates the good faith claim settlement practices set forth in § 33-18-201, MCA. The fact that damages due to a breach of the UTPA may also be damages arising out of a breach of contract should not preclude the award of punitive damages if it can be shown that the insurer acted *232 with malice.
¶51 In Lorang v. Fortis, 2008 MT 252, 345 Mont. 12, 192 P.3d 186, we held that “Montana’s statutory law provides that punitive damages may be assessed against an insurer which has committed the UTPA violations alleged here.” Lorang, ¶ 90 (citing § 33-18-242(4), MCA). We did not state that the insured must show damages beyond those caused by the breach of contract to seek punitive damages. We further stated “[t]he UTPA provides that, in addition to punitive damages, a claimant may recover the ‘actual damages’ which were proximately caused by a UTPA violation.” Lorang, ¶ 192. Again, we did not require damages beyond those caused by breach of the insurance contract. The fact that we did not require non-contract based damages is significant since virtually every UTPA claim arises from a breach of the insurance contract.
¶52 We do not hold that a party may seek punitive damages under the UTPA absent a showing of compensatory damages. Nor do we hold that an insurer who breaches the insurance contract has necessarily violated the UTPA. Rather, we hold that where an insurer has been found to have violated the UTPA due to delay or refusal to pay benefits in breach of the insurance contract, damages resulting from that violation may be considered compensatory damages under the UTPA for purposes of pursuing punitive damages.
¶53 Because we hold that, when an insurer is found to have violated the UTPA, breach of contract damages can also constitute compensatory damages for that violation, we conclude that the District Court’s jury instruction — which required the jury to find UTPA damages beyond damages for denial of benefits and late payments before it could consider the question of actual malice — did not fully and faithfully explain the law. The instruction prejudicially affected the Estate’s right to seek punitive damages. We therefore hold that the instruction constituted reversible error.
¶54 The jury in this case found that CULI violated the UPTA, and the court entered a directed verdict in favor of the Estate for $539,717.90. We remand for a new trial on the issue of malice and punitive damages with the instruction that the jury should consider the amount of the directed verdict to constitute damages under the UTPA.
¶55 3. Did the District Court err by failing to direct a verdict against CULI for violating the UTPA?
¶56 The Estate asks us to reverse the District Court’s failure to direct a verdict against CULI for violating the UTPA because CULI denied *233 that Judith’s death certificate was sufficient proof of loss for the cancer treatment claims, and because CULI admitted that it erroneously delayed payment on medical and death benefits. We decline to reach this issue, however, because here the jury found that CULI did in fact violate the UTPA and, on remand, the District Court will instruct the jury to that effect.
¶57 4. Did the District Court err when it did not dismiss the UTPA claim because CULI had a reasonable basis in law for denying the untimely filed claims?
¶58 Section 33-18-242(5), MCA, provides that an insurer may not be held liable for violating the UTPA if the insurer “had a reasonable basis in law” for contesting the claim. CULI moved for partial summary judgment, arguing that the notice of loss provision in its policy gave it a reasonable basis in law for contesting the claim. The District Court examined the state of Montana law with regards to the notice-prejudice rule at the time CULI made its coverage determination and concluded that the law was unsettled at the time. The court then considered the Estate’s contention that CULI acted unreasonably because it made its coverage determination without reference to Montana law and denied the motion, concluding that factual issues remained to be determined at trial.
¶59 The relevant inquiry in determining whether an insurer acted unreasonably under the UTPA is “how the insurer acted given the information available to it.” Peterson v. Doctor’s Co., 2007 MT 264, ¶ 43, 339 Mont. 354, 170 P.3d 459 (emphasis in original). CULI argues that we must consider the state of Montana law at the time CULI made its coverage determination, and that, because we had not explicitly adopted the notice-prejudice rule when CULI denied the claims, it was reasonable for CULI to rely on the notice of loss provision in the policy in denying coverage to the Estate. In support of this argument, CULI cites Redies v. Attys. Liab. Prot. Soc’y, 2007 MT 9, 335 Mont. 233, 150 P.3d 930.
¶60 In Redies, we addressed the question of whether a determination of “reasonable basis in law” under § 33-18-242(5), MCA, was an issue of fact or law. In that case, an insurer contested a claim on the basis that it owed no duty to a third party claimant. Redies, ¶ 23. We reiterated the general proposition that questions of reasonableness were factual matters properly answered by the finder of fact. Redies, ¶ 30. However, we also pointed out that our prior jurisprudence had adopted two exceptions to this rule where the insurer’s reasonableness is a question of law for the court to decide. First, we recognized an exception in situations where there was clearly no insurance policy in *234 effect at the time the injury occurred. Redies, ¶ 31. Second, we recognized an exception where the insurer’s basis in law was grounded on a legal conclusion and no issues of fact remained in dispute. Redies, ¶ 32 (citing Watters v. Guaranty Nat. Ins. Co., 2000 MT 150, ¶ 69, 300 Mont. 91, 3 P.3d 626). Under the second exception, we held that the insurer had a reasonable basis in law to deny the claim because Montana law at the time was unsettled and could be reasonably interpreted to support the insurer’s denial. Redies, ¶¶ 53-58.
¶61 CULI points to this holding as dispositive authority for the proposition that it had a reasonable basis in law for denying the claim, and thus the District Court should have dismissed the UTPA claim as a matter of law. We disagree. We recognize that, despite a trend in our jurisprudence toward adopting the notice-prejudice rule, that point of law remained unsettled when CULI made its coverage decision. However, Redies is distinguishable from the instant case in one crucial way. In Redies, we upheld the district court’s determinations that no facts remained in dispute and that the question of reasonableness hinged solely on whether the insurer’s decision to deny the claim was “grounded on a legal conclusion.” Redies, ¶ 34. We explained that, “[wjhile the assessment of reasonableness generally is within the province of the jury... reasonableness is a question of law for the court to determine when it depends entirely on interpreting relevant legal precedents and evaluating the insurer’s proffered defense under those precedents.” Redies, ¶ 35 (emphasis added).
¶62 Here, the District Court found that the question of whether CULI had reasonably grounded its denial on a legal conclusion was not entirely a matter of interpreting legal precedents and therefore was an issue of fact for the jury to decide. In denying CULI’s motion for summary judgment the court noted that “the propriety of the insurer’s action must be based in light of the information possessed by the insurer at the time it adjusted the underlying claim.” The court also explained that the Estate had raised questions about whether “the claim here was rejected based on a nationwide policy that had little or nothing to do with considerations of Montana law.” At trial both sides presented evidence as to what CULI knew or did not know about Montana law when it denied the claim. The parties introduced evidence ranging from the state of Montana law at the time of denial to whether CULI’s claim denial policy was based on informed legal conclusions. Such evidence was proper, because “[t]o determine whether an insurer had ‘a reasonable basis in law... for contesting the claim or the amount of the claim,’ it is necessary first to survey the *235 legal landscape as it existed during the relevant time period.” Redies, ¶ 29 (quoting § 33-18-242(5), MCA). And, “[t]he legal advice which informed [the insurer’s] decision to contest [the] claim is relevant to whether that decision was grounded in ‘a reasonable basis in law.’ ” Redies, ¶ 57. The court instructed the jury on the reasonable basis defense and the jury returned a verdict finding that CULI violated the UTPA.
¶63 The District Court correctly applied our holding in Redies when it determined that the reasonable basis defense issue in this case was not solely a matter of interpreting legal precedent and allowed the jury to hear evidence about CULI’s knowledge and application of Montana law. The District Court did not err when it denied CULI’s motion for summary judgment.
¶64 5. Did the District Court err by applying the statute of limitations from the date the PRs submitted their claim to CULI rather than from the date suit was filed?
¶65 The statute of limitations for commencing an action on a written contract, including an insurance contract, is eight years from the date the claim accrues. Section 27-2-202(1), MCA. A claim accrues when all elements of the claim have occurred. Section 27-2-102(lXa), MCA. An action is commenced when the complaint is filed. Section 27-2-102(l)(b), MCA.
¶66 In applying the statute of limitations to the oldest claims for medical benefits, the District Court calculated the limitation period from the date CULI received Judith’s death certificate, April 12,2010. Under that calculation, any claims accruing prior to April 12, 2002, would be barred by the statute of limitations. CULI maintains that the District Court should have applied the statute of limitations from the date CULI filed its declaratory judgment action in Federal District Court, on June 24,2011. Calculating from that date would bar all the Estate’s claims prior to June 24, 2003. The Estate requests that we affirm the District Court’s application of the statute of limitations.
¶67 In its order applying the statute of limitations from April 12,2011, the District Court correctly noted that a cause of action accrues, and the corresponding statute of limitations begins to run, when “the right to maintain an action on the claimis complete.” Section 27-2-102(l)(a)-(2), MCA. However, the corut then wrote: “[in briefing, CULI] admits that ‘an insurance claim does not accrue... until a claim is submitted ....’ citing Mont. Petroleum Tank Release Comp. Bd. v. Capitol Indem. Co., 2006 MT 133, ¶ 18... Mont. Petroleum Tank Release Comp. Bd. v. Empire Fire & Marine Ins. Co., 2008 MT 195, ¶¶ 20,24....” Relying on CULI’s ‘admission,’ the court applied the statute of limitations from *236 the date the claim was submitted (i.e., the date CULI received notice of the claim) rather than the date the action was filed.
¶68 A review of the record and our case law reveals the court to be in error. In its briefing before the District Court, CULI stated, “the [Montana Supreme] Court rejected the argument that an insurance claim does not accrue ... until a claim is submitted... .” (Emphasis added) (citations omitted). Our case law demonstrates that CULI was, and remains, correct. We have repeatedly stated that the accrual of a cause of action does not depend on when a claim is submitted to an insurer. Mont. Petroleum Tank Release Comp. Bd. v. Capitol Indemnity, 2006 MT 133, ¶ 18, 332 Mont. 352, 137 P.3d 522 (Capitol Indemnity)’, Mont. Petroleum Release Comp. Bd. v. Empire Fire & Marine Ins. Co., 2008 MT 195, ¶¶ 20, 24, 344 Mont. 54, 185 P.3d 1021 (Empire Fire). Rather, a claim accrues when all elements of that claim have occurred. Section 27-2-102(lXa), MCA; Capitol Indemnity, ¶ 18; Empire Fire, ¶¶ 20,24. In this case, a claim accrued for each medical treatment when the treatment occurred and Judith incurred the costs associated with that treatment.
¶69 CULI filed its declaratory judgment action on June24,2011. Thus under the eight year statute of limitations for contract claims, any claims that accrued prior to June 24,2003, are barred by the statute of limitations. On remand the District Court should amend the judgment against CULI to reflect this calculation.
¶70 As a final matter, the Estate argues that we should adopt an equitable tolling doctrine in first party insurance cases that would toll the statute of limitations during the period after the insurer has received notice of the claim until formal denial is provided to the insured.[1] However, the Estate, in its opening brief, did not request that we reverse the District Court and apply an equitable tolling doctrine with regard to the statute of limitations issue. Despite substantial discussion of the issue in front of the District Court, before this Court the Estate only raised the issue in answer to CULFs cross-appeal requesting us to apply the statute of limitations as we do now. We will not reach an issue of such importance to our insurance jurisprudence *237 without complete briefing on the issue by the parties. Therefore, without precluding our application of a first party insurance equitable tolling doctrine in the future, we decline to consider the issue here.
¶71 6. Did the District Court err in allowing the Estate to present evidence of out-of-state law and claim handling practices that were not directly related to the case at hand and allowing CULI to present evidence of Montana cases related to the notice-prejudice rule ?
¶72 The Estate argues that the District Court erred in allowing CULI to present evidence of Montana judicial opinions related to the notice-prejudice rule. CULI counters that the District Court erred by allowing the Estate to present evidence of laws from other jurisdictions, evidence of unrelated actions against CULI, and evidence of claim handling practices of other insurers.
¶73 As discussed in ¶¶ 54-59 above, CULI relied on the reasonable basis in law affirmative defense provided in § 33-18-242(5), MCA, to avoid liability under the UTPA. As part of its affirmative defense, CULI presented evidence of Montana judicial opinions tending to show the unsettled nature of Montana law with regard to the notice-prejudice rule. CULI attempted to demonstrate that its denial of the Estate’s claim was reasonable because Montana law did not prohibit it from denying the Estate’s claim based on late notice.
¶74 In arguing to the contrary, the Estate presented evidence that CULI disregarded the laws of Montana and other states and comparative evidence of CULI’s and other insurers’ claim handling practices to show that CULI did not have a reasonable basis to deny the Estate’s claims.
¶75 Montana R. Evid. 401 provides that evidence is relevant if it “[has] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” As demonstrated by our analysis in Redies, an insurer’s actual knowledge of the law and whether the insurer relied upon a reasonable conclusion of law in denying a claim are both relevant to the question of whether the insurer had a reasonable basis defense to the UTPA. Redies, ¶ 57. It stands to reason that, in order to demonstrate that it had a reasonable basis in law for denying a claim, an insurer should be able to present evidence as to the state of the law when the denial was made. The insured, on the other hand, should be allowed to present evidence of the insurer’s actual knowledge of the law and whether it reasonably relied on that knowledge in denying the claim.
¶76 Here, the District Court fairly allowed both sides to present legal and factual evidence relevant to CULI’s reasonable basis defense. The *238 District Court exercised its judgment within the bounds of reason. We hold that the District Court properly exercised its discretion in allowing CULI to present evidence of cases addressing the notice-prejudice rule that were decided after CULI denied the Estate’s claim. Those cases demonstrated the unsettled nature of Montana law with regard to the notice-prejudice rule at the time CULI denied the Estate’s claim. We further hold that the District Court properly exercised its discretion in allowing the Estate to present evidence of how CULI and other insurers handle untimely filed claims in other states. That evidence was relevant in order to refute CULI’s affirmative defense that it had a reasonable basis for denying the Estate’s claims. We affirm the District Court on this issue.
¶77 7. Did the District Court err in awarding trial costs to CULI where the jury found that the UTPA was violated and the court entered a directed verdict in favor of the Estate?
¶78 A plaintiff is entitled to costs in an action for the recovery of money or damages where the judgment is in the plaintiffs favor and the plaintiff recovers over $50. Section 25-10-101(3), MCA. Conversely, when judgment is in the defendant’s favor costs must be allowed to the defendant. Section 25-10-102, MCA. Here, the District Court granted costs to CULI, reasoning that because the jury awarded no damages to the Estate, CULI was the prevailing party.
¶79 We held above that the District Court erred by preventing the jury from reaching the question of malice and we ordered the case remanded for a new trial on that issue. Accordingly, we reverse the award of trial costs to CULI.
¶80 8. Did the District Court err in awarding attorneys> fees to the Estate?
¶81 The District Court awarded the Estate attorney’s fees and costs based on the contractual damages awarded in the directed verdict on the first day of trial. “Montana follows the American Rule regarding attorney fees where each party is ordinarily required to bear his or her own expenses absent a contractual or statutoiy provision to the contrary. However, there are several equitable exceptions to this rule.” Winter v. State Farm, 2014 MT 168, ¶ 31, 375 Mont. 351, 328 P.3d 665 (citing Mt. W. Farm Bureau Mut. Ins. Co. v. Brewer, 2003 MT 98, ¶ 14, 315 Mont. 231, 69 P.3d 652). One of the exceptions to the American Rule is the “insurance exception” which allows an insured to recover attorney’s fees when she is forced to resort to legal action against the insurer to obtain the full benefit of the insurance contract. Winter, ¶ 31.
¶82 The situation before us falls squarely within the insurance *239 exception to the American Rule. Having been forced to pursue legal action to obtain the full benefit of the insurance contract, the Estate prevailed in recovering more than $500,000. The Estate is entitled to attorney's fees on its action against CULL
¶83 CULI cites Sampson v. Nat’l Farmers Union, 2006 MT 241, 333 Mont. 541, 144 P.3d 797, for the proposition that attorney’s fees may not be awarded in UTPA actions. CULI misstates our holding in Sampson. Sampson involved the question of whether attorney’s fees could be awarded as damages in a UTPA action. We looked to the construction of the UTPA and concluded that, because the legislature had not seen fit to construct the UTPA to provide for the recovery of attorney’s fees, such fees were not allowed as damages in a UTPA action. Sampson, ¶ 22. See also Jacobsen, ¶¶ 18-24. However, we also restated our commitment to the insurance exception of the American Rule. Sampson, ¶ 19. The insurance exception did not apply in Sampson, because the prevailing party was not the insured. It applies to the Estate in this case.
¶84 The District Court’s award of fees and costs to the Estate is affirmed.
CONCLUSION
¶85 With our opinion today we affirm the District Court’s application of the notice-prejudice rule and formally adopt the notice-prejudice rule in first party insurance cases.. We remand for a new trial on the issue of malice and punitive damages in accordance with our holding that, when an insurer is found to have violated the UTPA, a jury is not required to find compensatory damages beyond those for breach of the insurance contract before considering malice and punitive damages under the UTPA.
¶86 We affirm the District Court’s refusal to dismiss the UTPA claim on the issue of whether CULI had a reasonable basis in law to deny the claim. We remand for the District Court to amend its order applying the statute of limitations consistent with our opinion here. We reverse the District Court’s order awarding trial costs to CULI. We affirm the court’s award of costs and attorney's fees to the Estate.
¶87 Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
CHIEF JUSTICE McGRATH, JUSTICES SHEA, COTTER and BAKER concur.

 See, e.g., Peloso v. Hartford Fire Ins. Co., 56 N.J. 514, 267 A.2d 498 (1970); Prudential-LMI Com. Ins. v. Superior Court, 51 Cal. 3d 674, 798 P.2d 1230 (1990); Guam Housing & Urban Renewal Auth. v. Dongbu Ins. Co., 2001 Guam 24; Leonard J. Feldman et al, The Equitable Tolling Doctrine in First Party Insurance Coverage Matters; Analysis, Benefits, and an Illustrative Case Study, 41 Tort Trial and Ins. Practice L. J. 61 (Fall, 2005).